## NORTON IRON WORKS v. STANDARD SLAG CO.

(Circuit Court of Appeals, Sixth Circuit. July 12, 1926.)

No. 4579.

**1. Sales &#9758;79.**

Contract for sale of slag, to be paid for in pits, *held* to contemplate acceptance of slag in pits, and not to require buyer to pay cost of keeping trough from furnace to pit open.

**2. Contracts &#9758;170(1).**

Rule that ambiguities in contract are removed by practical construction placed thereon by conduct of parties is not applicable to contracts that are plain in their terms.

**3. Sales ⊕⎯79.**

Where buyer of slag under contract calling for acceptance in pits agreed under protest to pay cost of keeping trough from furnace to pit open, agreement was not interpretation of contract which would require buyer to pay such expense under later similar contract.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Action by the Norton Iron Works against the Standard Slag Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Clyde L. Miller, of Ashland, Ky. (Dysard & Miller, of Ashland, Ky., on the brief), for plaintiff in error.

A. R. Johnson, of Ironton, Ohio (Johnson & Jones, of Ironton, Ohio, and S. S. Willis, of Ashland, Ky., on the brief), for defendant in error.

Before ˈDENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. The Norton Iron Works is engaged in the manufacture of iron. A by-product is slag. The Standard Slag Company contracted for all the slag to be produced at the iron works plant from June 27, 1919, until December 31, 1921. The slag is drawn in liquid form from the iron ore, and in this case was caused to run from the furnace through a semicircular trough to a pit, where it was stored. Some of it, because it solidifies rapidly after leaving the furnace, would adhere to the trough during the flow. It was necessary to employ workmen to remove this slag and keep the trough open. The Iron Works charged the cost of this work to the slag company, but the latter company objected to paying it, claiming that it was not bound therefor under the contract. A conference between officers of the two companies failed of agreement. In a letter of July 27, 1920, to the iron works, the president of the slag company, without admitting liability therefor, agreed to pay the charge rather than "have you feel that we are taking an advantage in construing the contract contrary to your ideas." On March 31, 1922, a second contract was entered into by the parties, containing the same language concerning this matter as the first, but providing for an advance in the price of the slag from 10 to 15 cents a ton.

During the life of the second contract the iron works paid $4,208.95 for keeping the trough open, for which it billed the slag company. That company refused to pay the bill, and this action was brought to recover judgment thereon. On the trial the District Judge directed a verdict for defendant. The case turns on the meaning of the contract. The contentions of plaintiff in error are: First, that the correct interpretation is that the slag company would accept the slag as it came from the furnace into the trough, and was therefore required to keep the trough open; second, if the contract was not clearly so construable, it was ambiguous, and the construction that the parties had placed upon the same language in the old contract was binding; and, third, having entered into the contract with knowledge of the iron works' interpretation of a similar contract, the slag company must be deemed to have agreed to that interpretation.

[1] The slag company agreed to enlarge the pits at its own expense, to remove the slag at such rate as to keep the iron works "in dumping space," and to pay "for the slag in the pits." This language, in our opinion, means that there was to be an acceptance of the slag in the pits, and not elsewhere. Under that construction, the only question is whether the accession to the iron works' interpretation of the first contract, without conceding the correctness of it, which is manifestly the import of the letter of July 27th, must be deemed to have been understood by the parties to be carried into the second agreement.

[2, 3] There are many cases holding that ambiguities arising from the words employed in a contract are removed by the practical construction placed upon them by the conduct of the parties. Toplift v. Toplift, 122 U. S. 121, 7 S. Ct. 1057, 30 L. Ed. 1110; Indian, etc., v. Bartlesville, etc. (C. C. A.) 288 F. 273. But this rule is not applicable to contracts that are plain in their terms. Such contracts must be given their proper legal construction; otherwise there would be a denial of the terms, and a contract made for the parties to which they had not agreed. Lehigh Valley R. Co. v. Stewart, 37 N. J. Law, 53; Griffin v. Coal Co., 59 W. Va. 480, 53 S. E. 24, 2 L. R. A. (N. S.) 1115; Pressed Steel Car Co. v. Union Pacific R. Co. (C. C. A.) 297 F. 788.

The cases cited by counsel for the iron works are not opposed to this rule. They deal with contracts in which the parties so expressed themselves as to leave their intentions doubtful. In Bowers, etc., v. United States, 211 U. S. 176, 29 S. Ct. 77, 53 L. Ed. 136, the contract was plain, and upon that ground the court sustained the government's contention. The reference to the effect of the construction placed on the original contract was

based on the assumption that it—the supplemental agreement being identical therewith—"was susceptible of a different construction" from that which was held to be its plain import, or, in other words, upon the assumption that it was ambiguous. In that state of case, the construction placed on the first contract would undoubtedly be entitled to great weight in construing the second. But that question does not arise here, as the slag company did not agree to the iron works' construction of the former contract, but only acquiesced under protest for the purpose of that contract; and, besides, this contract is susceptible of no other construction than it was the duty of the iron works to deliver the slag in the pits.

Judgment affirmed.