[Crim. No. 2705.  Second Appellate District, Division One.—June 5, 1935.]

THE PEOPLE, Respondent, v. LESTER HOBSON et al., Defendants; WILLIAM GUIHAN, Appellant.

Martin S. Ryan for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

EDMONDS, J., *pro tem.*—The defendant was convicted by a jury of the crime of burglary and appeals from the judgment and from the order denying his motion for a new trial. His principal point on appeal is that the evidence is insufficient to sustain the verdict.

The information charged the defendant and also Lester Hobson, Peter D. Bout and John H. Wright with the burglary of a store from which seventy rugs were taken. The defendant Wright pleaded guilty to the charge, and the defendant Hobson made a confession to the police and also admitted the charge in his testimony at the trial. The district attorney dismissed the information against the defendant Bout and thereafter called him as a witness for the People.

The testimony of Bout was that he saw Guihan and Hobson talking with Wright the night the rugs were stolen; that he did not hear the conversation and that the three left in about fifteen minutes; that he did not go into the rug store but that some rugs were brought to Wright's car parked near the place and in which he was seated, and that he and Wright drove away with them. He further testified that he, in company with Wright, met Hobson and Guihan four or five days later. At that time, according to his testimony, either Guihan or Hobson said, when all four were present, "that they didn't have much trouble getting in, by taking a rock, throwing it on the glass, reaching inside with their arms and opening the door", and "that they had someone out selling the rugs already, they were expecting the money from it".

Except for Bout's testimony there is no evidence connecting appellant with the crime except the testimony of two police officers relating statements alleged to have been made to them by appellant after he was arrested. According to one officer, when appellant was asked about the crime "he said he would help us recover the rest of the rugs; we told him we had recovered about twenty rugs up to that time, and we told him there was about fifty out standing, something like that; he said he would help us recover the——but he wanted

to talk to his attorney first before he made any statement''. The officer did not testify to what he said to appellant at the time this statement was made. Another officer testified that when appellant was in jail he had a conversation with him. ''I called him down, took him in the little side room and said to him, 'Well, Bill, what are you in here for now?' and he says, 'Well, it is just a dumb beef'; I says, 'Well, I will tell you, this man wants his rugs back, and you know me and I know you; let's get his rugs back to him'; and he said he wouldn't make any statement of any kind until he talked with his attorney; . . . '' These statements, the appellant insists, are not sufficient corroboration of the testimony of Bout to sustain the verdict.

██ Bout was an accomplice, and a conviction cannot be sustained upon his testimony ''unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof''. (Pen. Code, sec. 1111.)

In determining the question of corroboration the testimony of the accomplice must be eliminated from the case. (*People* v. *Robbins,* 171 Cal. 466 [154 Pac. 317].) ██ This leaves no evidence to support the verdict of guilty except the statements of the defendant to the police officers. The meaning of the appellant's alleged statements that ''it is just a dumb beef'' is not shown in the record, and without explanation does not convey any meaning tending to connect him with the commission of the crime. The language used may be the equivalent of a positive denial of guilt. The defendant's other statement that ''he would help us recover the rest of the rugs'' falls far short of the amount of corroboration required by section 1111 of the Penal Code. Considering it in its most favorable light, it is consistent with the innocence of the accused, and as such cannot amount to corroboration. (*People* v. *Robbins, supra.*) At the most it raises only a suspicion of guilt, and more than mere suspicion is required.

The question of the corroboration of an accomplice was discussed at length and the authorities reviewed in the case of *People* v. *Kempley,* 205 Cal. 441, 456 [271 Pac. 478], where it is said: ''The question of how much more than a mere suspicion is required in order to constitute corroboration has

been answered by many cases in declaring further that 'corroborative evidence is insufficient when it merely casts a grave suspicion upon the accused'. (*People* v. *Robbins,* 171 Cal. 466, 470 [154 Pac. 317] ; *People* v. *Woodcock,* 52 Cal. App. 412, 417 [199 Pac. 565] ; *People* v. *Janssen,* 74 Cal. App. 402, 407 [240 Pac. 799].) The code section is mandatory (*People* v. *Allison,* 200 Cal. 404 [253 Pac. 318]), and a conviction cannot stand unless the testimony of the accomplice is corroborated in accordance with the standards laid down by the courts in the interpretation of the statute. 'The court has no discretion in the matter, but is bound to apply the statute indiscriminately to all cases whenever an accomplice appears as a witness, and the State's case depends solely upon his uncorroborated testimony.' (*People* v. *Robbins,* 171 Cal. 466, 469 [154 Pac. 317, 318].) If the testimony of the accomplice is not sufficiently corroborated, the conviction of the accused is wholly wanting in a legal foundation to support it. (*People* v. *Viets,* 79 Cal. App. 576, 587 [250 Pac. 588].) ''

The evidence in this case does not measure up to what is legally required for corroboration. The judgment is reversed, and the order denying motion for new trial is reversed.

Conrey, P. J., and Houser, J., concurred.