**Seth E. GIEM, d/b/a Seth E. Giem and Associates, Appellant,**

**v.**

**Leon T. SEARLES and Betty Marie Searles, his wife, d/b/a Allcock-Searles Building Supply Company, Appellee.**

Court of Appeals of Kentucky.

March 12, 1971.

Rehearing Denied Oct. 1, 1971.

Herbert S. Melton, Jr., Paducah, for appellant.

William B. Byrd, Paducah, for appellee.

STEINFELD, Judge.

In April and May 1963 appellant Seth E. Giem, a general building contractor, was preparing bids to be submitted to the Commonwealth of Kentucky for construction of dormitories at Murray State University. Prior to bidding Giem obtained cost estimates from various subcontractors and ma-

terialmen. Appellee, Leon T. Searles, the managing partner of a building supply company, submitted to Giem a quotation for millwork, lumber and other items. It contained the unit price of the items listed and a total arrived at by multiplying the number of items of each class times the price per item. The unit prices for the items were correct, however, a grievous mathematical error was made as to the total price for certain doors and door frames. The quotations were as follows:

| "Description | Feet | Price | Amount | (Should Have Been) |
|---|---|---|---|---|
| Wood doors for wardrobes | 1208 | 11.30 | 1,365.04 | (13,650.40) |
| Door frames for wardrobe units | 302 ea. | 10.00 | 320.00 | (3,020.00)" |

These mistakes resulted in the quotation for those materials being $14,985.36 less than was intended.[1] Searles' quotations were the lowest submitted to Giem on certain items.

After having been awarded the general contract for construction of the dormitories Giem mailed a purchase order to Searles which included doors and frames and some other items for which Searles had quoted prices. It did not show any unit prices. In placing this order Giem used the erroneous totals for "Wood doors for wardrobes", and "Door frames for wardrobe units" thereby fixing the total price for all items included in that order at $18,605.77 when had he used the unit prices of $11.30 and $10.00 respectively the total for that order would have been $14,985.36 greater than it was. This purchase order was accepted by Searles by his affixing the name of his company and his signature and returning a copy to Giem.

During construction, items listed on the purchase order and others were delivered from time to time on request and were billed on an open account. Searles billed Giem monthly computing the charges on the quoted unit prices rather than on the erroneous totals. Giem paid periodically as billed. As the job neared completion Giem tabulated the total costs and noted that according to the prices used in preparing the purchase order he had overpaid Searles the sum of $12,049.85 on the doors, and $2,694.00 on the frames. (The difference in alleged overpayment and error on the estimate is because of the difference in the number of items ordered and other minimal changes.) He demanded refund which Searles declined to make. At that time there was a balance due Searles (according to his figures) of $991.10 and $301.47 which Giem refused to pay.

Giem sued for refund of his claimed overpayment and Searles counterclaimed for $991.10 and $301.47. These latter two amounts were not contested as they were charges for items not here involved. Giem recovered judgment on trial without a jury, (which was waived) for $4,000 less the counterclaim.

Giem has appealed contending that the measure of damages used by the trial court was improper resulting in the award to him being inadequate. Searles has cross-appealed claiming among other things that the course of dealings established the meaning of the contract.

The parties had agreed as to the merchandise to be supplied. However, because

1. There was a third and similar error as to bookshelves. The total price for the shelves was mistakenly quoted as $24.16 when it should have been $2,416.00. However, these shelves were purchased from another supplier and are not here involved.

of the series of errors with respect to prices we look to the activities of the parties to determine the amount which Searles expected to be paid and Giem expected to pay. As noted above Searles billed Giem using the quoted unit prices which statements Giem paid without protest and as they were due. Under these circumstances we hold that this course of dealings indicated the intention of the parties. Willey v. Terry & Wright of Kentucky, Ky., 421 S.W.2d 362 (1967) and Keyes v. Carrick, Ky., 268 S.W.2d 397 (1954). In Trapp v. Conley, 28 Ky.Law Rep. 475, 89 S.W. 514 (1905), bi-monthly statements were computed, it was claimed on the wrong basis, but were paid. Holding the parties bound by what they did, we said "While the proof is conflicting as to what the contract was, there is no contradiction of the proof as to the construction of the contract by the parties, and this practical construction of the contract by them while the work was going on is conclusive upon them now." Also see Burchett v. Jones, Ky., 291 S.W.2d 32 (1956). We hold the rationale of the Trapp and Burchett cases applies. The trial court erroneously found that Giem should recover $4,000 on the basis that he had overpaid that amount.

Searles asserted an additional counterclaim to recoup damages for dealings with Giem before the current transaction, but this was predicated on the possibility that the court would base its judgment on the custom the parties had followed in prior transactions. Our opinion is not so based, therefore, we deem it unnecessary to discuss that counterclaim which was disallowed by the trial court.

The judgment is affirmed in part on the original appeal and reversed on the cross-appeal with directions to enter a new judgment dismissing Giem's claim and adjudging Searles entitled to recover on his counterclaim the sum of $1,292.57.

All concur.